Blair Storzer is here for the appellants. Taylor Barr Johnson for the affilee. And once you're all ready there, Ms. Storzer, you may begin. Ms. Storzer is here for the appellant. Good morning, and may it please the Court. My name is Blair Storzer, and I represent the Thai Meditation Association of Alabama and the Nimmit-Yongskal family. This is our second time before this Court. The first time in a case that I'll be referring to as Thai Meditation I, this Court further explained its decision in Midrash Sephardi v. Town of Surfside, and set forth a number of factors to consider when deciding a relupa substantial burden claim. On remand, the District Court erred in granting summary judgment in favor of the City of Mobile, and the District Court erred in three ways. First, the District Court erred by treating the elements that this Court established in Thai Meditation I as factors that a plaintiff must meet in order to show a substantial burden. Second, the District Court erred by applying rational basis review to plaintiffs' free exercise claim. And third, the District Court erred when it held that the City of Mobile had met its burden of demonstrating a compelling governmental interest sufficient to meet strict scrutiny review of plaintiffs' Alabama Religious Freedom Restoration Act claim. Turning to plaintiffs' relupa substantial burden claim, the District Court erred by holding as to four of the factors that the plaintiffs had not met their burden. Specifically, as regards plaintiffs' reasonable expectation, the District Court copied and pasted a portion of its 2018 summary judgment decision, and in that conflated a reasonable expectation with a guarantee of approval, which the Fourth Circuit specifically has held is not the standard in the course of modern zoning practices. Here, the plaintiffs completely complied with the process and were justified in believing that they could meet a series of conditions in a zoning district that not only allowed but encouraged church use. At the pre-development meeting with the City of Mobile, the purpose of which is to discuss whether a use is appropriate in a zoning district, there was no indication that any of the plaintiffs' use could not be built in such a way that would meet their religious needs and satisfy the City's concerns. You said there was no indication that it would not be approved. Turning that around, was there any indication that it was? Because I thought the record reflected that the response was basically you have to go through the process. Yes, Your Honor. During the pre-development meeting, there were representatives from all of the City's various departments that would participate in the review of an application. Including traffic engineering, including the fire department. And they said you will go through the process, but there were no issues that would be flagged, which is the entire purpose of a pre-development meeting. So there was no objection as to the access. There was no objection as to the surrounding area. And that is why the plaintiffs felt that they couldn't meet all of those conditions. The plaintiffs relied upon their real estate professional who had had 10 or 15 planning approval applications himself before the planning commission. All of which had been approved. Were any of them churches? Were any of them religious organizations? They were not. They were not. Although the plaintiff's situation in this case is very similar to another church that had been approved, the Gates of Praise Missionary Baptist Church. Which was in the same zoning district on the Dog River, surrounded by residential uses. And so plaintiffs were justified in their reasonable expectation. Especially under Jesus Christ as the answer ministries. The case out of the Fourth Circuit. In which the idea that you had to meet some zoning criteria was not evidence that your belief that you could meet those criteria was not reasonable. Especially when the plaintiff in that case was relying on her real estate professionals. In the absence of any requirement that there had to be some sort of encouragement or some sort of suggestion that the zoning application would be approved, what would keep any religious organization from simply buying property and then saying, Aha, strict scrutiny applies? Well, Your Honor, let me answer your question by contrasting that with some of the cases where the expectation has not been found to be reasonable. In the Andon case, at a meeting with a city official, the city official said the zoning does not permit your use. That is the same thing as in Petra. The zoning did not permit the use. In Canaan Christian Church, there was a master plan that said sewer will not be approved for any use. That is a very different situation when the zoning allows the use. And here, where the R1 district is one of three of the 15 within the city of Mobile, which actually encourages church use. The district court also erred when it conflated a showing of arbitrariness with a showing of discriminatory animus. To conflate plaintiff's non-discrimination claim with any showing of arbitrariness violates canons of statutory construction. So what you're asking of this court is to remand it back again to the district court for the district court to take into consideration a totality of the circumstances rather than just check off the boxes with regard to those six factors that we identified that the court ought to take into consideration in determining whether or not there's an R loop or claim. Is that right? Well, Your Honor, plaintiffs do not believe that remand is necessary. There's no outstanding issues of material fact, but if this court were to remand it, Yes, this court could certainly make clear that a totality of the circumstances analysis does not include a checklist. If there are issues of fact. We do not believe that there are issues of fact. One of the factors that I think we identified that the court ought to consider was factor two, the extent to which the city's decision effectively deprives the plaintiffs of any viable means by which to engage in protected religious exercise. Why can't the plaintiffs use that 100 acre parcel that was donated to them for the purpose of building a mediation center? Well, Your Honor, the record is clear that plaintiffs land use professionals advised them that they did not believe that any application for that would be approved. And that is because of the access issues of that property and because it borders single family homes. So that has never been deemed to be available. The city has never indicated that a use there could be approved. And here, the location of a Buddhist meditation facility is religiously significant. That is in the record. R2 zoning includes residential property and churches, though, right? Yes, the property that Your Honor referred to is also in the R1 district. But all of these include residential homes as well as churches. But part of the city's position in this case has always been that Plaintiff's Meditation Center is not compatible because it is near homes. But the city, in arguing that there is a readily available alternative, is discounting the fact that the other location is also near homes. But that's not the only property that Thai Mediation owns. There are several other pieces of real estate throughout Mobile that they could use instead of the Elon property, isn't there? It is not in the record. I mean, there are other homes, but all of those are homes in residential neighborhoods. So if the city's position is that a meditation center is not compatible if it's in an existing home, which was their position in 2007, and that it's not compatible if it's a new building near homes. So this 100-acre lot, there are single-family homes on the block? Yes, Your Honor. The testimony by the real estate professional who advised the plaintiffs that she did not believe that an application for that property would be approved specifically mentioned that the access would have to be next to homes. And those were a number of reasons why she didn't believe and advised the plaintiffs that she did not believe that it would be approved. Let me ask you this question. So since the zoning application was denied, has the association taken any steps to submit a modified plan that might be approved? There's no indication that the city would reasonably consider a modified application. Right? The city argues in this case that a complete denial was the least restrictive means of protecting its interests. So there's no modified application that the plaintiffs could submit here that would satisfy that interest. And that's why this was finaled. As compared to the cases on which this court relied in Time Meditation I, such as Westchester Day School, where the municipality invited a modified application, said, oh, move the driveway, make the buildings a little smaller. Here the plaintiffs had already made the buildings smaller, had actually omitted a building after meeting with the neighbors. And it wasn't enough. Does the record reflect what sorts of properties are available in areas where religious use is as of right? I know there's evidence that the current location is unacceptable for various reasons. But is there anything in the record about other possible locations? There is something in the record as to the total number of acres that are zoned R1, but nothing further. And the standard here is not whether there is some other property available. The standard is whether there are readily available alternatives to the plaintiffs. And there are not. Any other property would involve delay and expense. And for the city to say, well, you can be in another commercial property doesn't carry the day, because plaintiffs would have the same sort of issues with their religious exercise as they do now, which is noise, which is not having a facility that meets the requirements set forth in the Pali Canon, one of the important Buddhist scriptures. The fact that plaintiffs need to be away from distractions, that that is religiously significant, that is uncontested, Your Honor. Moving quickly to plaintiffs' free exercise claim, the discretionary denial of planning approval is not a law of general applicability. And for that reason, rational basis review was inappropriate. It was inappropriate under the Supreme Court's recent case law in Fulton v. Philadelphia. Further, in both Fulton v. Philadelphia and in the Supreme Court's other recent decision in Brooklyn Archdiocese v. Como, plaintiffs need only show a religious burden and not a substantial burden to trigger strict scrutiny review. The district court erred on both counts. I see that I've exceeded my time. If the court does not have any questions about Plaintiff's Alabama Religious Freedom Restoration Act, I will sit. All right. Thank you, Ms. Dorser. We'll hear from Ms. Johnson. Good morning, and may it please the Court. I'm Taylor Johnson here on behalf of the City of Mobile. The district court correctly applied a flexible fact-driven balancing test in determining that a palanced religious exercise was not substantially burdened. This case involves a very unique site application. The meditation center was seeking to relocate from a shopping center, which the Nimmitt family owned, to a single-family residential home. The use contemplated converting that home into a meditation retreat center, adding three additional buildings. The use would be for three meetings a week, approximately 200 days a year. The site is located on a substandard road and is located within a neighborhood that is in close proximity to a school. It also is a neighborhood that has no sidewalks, and there's a good bit of foot traffic that happens between the hours of 5 and 7 p.m., which is the same time that the center is wanting to have this assembly use, where you would essentially have all of the vehicles coming in at once and then leaving again at once. Well, there were some religious objections to the relocation of the meditation center to this site, right? In fact, the city added its minutes in order to hide those religious objections. Your Honor, this court recognized in its initial opinion that there certainly was a religious issue. However, that issue was self-imposed to the extent that the meditation center, in all of its marketing materials, promoted itself as being non-religious. There's also testimony in the record that some of the neighbors were even told that the center is non-religious, and that created a confusion that really carried on throughout the planning process. But in the end, as this court noted in the original opinion, the planning approval criteria was applied. That was agreed to by the appellant's attorney that was there at the planning commission meeting, as well as the planning commission chair. And ultimately, the decision was made based on site access, traffic, and issues with the compatibility of the site. And I would like to speak to the fact that it is a very unusual request in the planning process to convert a single-family home, where there's not been any prior religious use or church use or even commercial use. And I believe that my friend on the other side referred to the Gates of Praise Church. It is located in the same area. However, it's a pre-existing church site that a different church came in and used. Don't residential districts encourage churches? The residential districts in the planning approval encourage churches where the site plan can work within the harmony of the neighborhood. The R1 district in Mobile has a variety of sites. Some are rural. Some are more agricultural. Some are areas where there's not even R1 development at this time, but there may be later. So all of the site, you know, the planning approval criteria is always site plan specific. And there will be some areas in the R1 where a church may work, and there may be other areas where the issues of compatibility, traffic, and access don't work. Does the city have, oh, excuse me. I was just going to follow up to that. But that sounds like that's an issue of fact, doesn't it? I mean, whether or not this particular residential district would accommodate a church while others do. Well, this one couldn't accommodate it while others do. So it seems like that ought to be an issue of fact rather than subject to summary judgment though, right? Your Honor, I believe the R-Lupa substantial burden analysis is always going to be a factually driven analysis. But it's also a question of law for the court. So the district court has reviewed the record. He actually was able to do a live site visit during the Benz trial. He also was able to hear from many of the planning commission members who discussed their reasons for why they came up with the denial. He also heard from the applicant. So I would agree with opposing counsel that there really are not fact issues that still need to be decided at this point, that it should be a question of law for the court. In the record, does the city have any concrete analysis or study as to the purported traffic or safety risks arising from the proposed use of the property? Your Honor, because this particular area is on a substandard street, it's not a major thoroughfare. So it didn't meet the traffic requirements for 100 trips that would get all the official studies done. What the city's traffic engineer did say is that because of, you know, So proportionally speaking, it is a large impact, even if it doesn't meet the traffic counts that you would do on a more major thoroughfare, such as where the shopping center location is now. Does the city quarrel with the fact that the current site is inadequate? The city's position on that is that they chose that location. The Nimitz own that shopping center, so it's a location of choice for them. Certainly the city has never said you need to be in a shopping center. My opposing counsel did make a comment about the commercial districts and whether or not there's been any evidence of other sites that may be available. And they have not carried the burden of showing that there are no other available sites. The commercial districts in Mobile are as of right. A church or a religious youth can come in as of right, and that's 11% of the city. And even within the commercial districts, you have a good variety of properties, not on major thoroughfares, shopping centers. Some are in much more rural areas than the city. And there's been a stipulation by the accounts that there are other suitable properties that may be available within the city. I wanted to ask you about something that Ms. Storrs raised, and that is you argue in your substantial burden analysis that the city's decision was not final, but then you also argue under strict scrutiny that denial of the application was the least restrictive means. Would you clear up that seeming contradiction? Yes, Your Honor. As to the absolute final decision, well, we'll call it a factor or balancing factor, certainly there was no conditions put on this particular denial. However, at all times, the Meditation Center has been able to file a modified site plan. Here, the whole planning process only took four months. So it's a fairly succinct process, and they certainly at any time can file another one. They have not. There was never any suggestion. Well, I guess the question is, would filing another one be likely to be successful? Could they fix the city's concerns in a different application? Yes, Your Honor. The conditions generally are going to deal with the technical requirements that the staff is looking at with the zoning regulations. In this case, the public input about the safety concerns, traffic, and things that were not in front of the staff are really what drove the decision here. And so at any point in the process, they could have put conditions on it. That never happened. The city doesn't design a site plan, however. It would be unusual for a staff to come in and say, well, you're wanting to do 200 days of activities and three buildings. We don't think that's appropriate. You need one building and one night a week. I mean, that would change the whole heart of their site plan. So it's the applicant's burden to bring to the city another site plan with a modification of the scope and scale of the project and the amount of use that could work within the city's planning criteria. That would involve a measure of delay and expense, would it not? Your Honor, the whole process here took four months, and you can compare that to the Westchester Day School case where they went back and forth with the city for a year and a half. So in comparison to the other cases, it was a relatively succinct process, and at any time during this litigation, they could have filed another site plan, but that hasn't happened. Okay. And to address the least restrictive means aspect, again, our argument would be for the site plan they presented, that was the least restrictive means, but that doesn't mean that one that had a modified scale or modified usage would not have a different result there. I'll address the religious activity. Before you go there, and I believe in their brief, they say that the city's experts and officials testified that traffic concerns were not the basis of the denial and that the center would not cause traffic problems. Is that in the record? The traffic engineer testified that because it is a relatively low usage road, it doesn't meet the qualifications for what they would consider a traffic problem. However, she also testified that for the community itself, it could be doubling the amount of traffic, and based on where people are going to be outside on their homes, this could present a problem. But from her viewpoint of looking only at what the city measures as a traffic problem, that was her testimony. That's correct. Turning to the free exercise claim, Your Honor, this circuit applies a two-part test to those. They first look at the substantial burden aspect. So if the court agrees that there's not a substantial burden there, the inquiry would really end at that point. It then does look at whether it's a neutral or generally applicable law, and here that would be an as-applied application. We disagree with our friends on the other side that it would not be a rational basis standard here. The planning approval criteria is applied the same to secular organizations as it is to religious organizations. So it is under the Smith rule of law, which is still the prevailing case here. It is forward in that rational basis review. Finally, I'll touch briefly on the ARFA claim. That claim is one that involves a statute in Alabama that's never been interpreted before by any Alabama state court. It does have a much more narrow construction than the federal counterpart based on the fact that it draws within Article I, Section 3, which is a much more limited definition of freedom of religion than you would see in the federal counterpart. So ARFA simply doesn't apply to this action. It's never been applied in 24 years to a municipal land decision case. What hasn't been applied? ARFA has never been applied in a land decision case. So our argument would be that it doesn't apply here. If I could go back to the ARLUPA claim, I couldn't find a decision from any court that has ever held that zoning, that traffic or aesthetics would constitute a compelling government interest in a case like that. Are you aware of any case where a court has said that those sorts of things would constitute a compelling governmental interest? In this court, Gross v. City of Miami Beach is the case that's really addressed that. And they have noted that there is a significant governmental objective that is proper in enforcing of the zoning regulations here. And, you know, while the compelling interest standard is high, it's not impossible. And the city's zoning regulations are intended to protect the citizens from safety issues, traffic issues, and conserve a family environment, which is what the decision here was based on. I would like to turn back a little bit to the substantial burden test just to comment that this was discussed some with opposing counsel as well. The district court looked at all the factors and was particularly taken with the self-harm or reasonable expectation factor as well as the arbitrary capricious factor and those that look at whether or not the burden is caused by the applicant or the governmental decision. Here, the applicant previously had applied for another property in a single-family district in a very similar established neighborhood and met with the staff who had negative feedback in terms of whether that would be possible to convert the single-family home use and whether or not that would work with traffic and access issues. There was similar public input that was received in a negative way there. And ultimately, Ms. Nemit ended up withdrawing that application. So when she went to apply for the Elong property in 2015, there was a previous history, and she knew that planning approval is not something that necessarily is going to be granted in every case, particularly when you're converting a single-family home use to something completely different and there's no history of that on that property and you're changing the entire landscape of the neighborhood. To that point, Ms. Nemit even put a contingency in her purchase contract for the property that she was not going to buy it unless she could get planning approval, but she ultimately withdrew that contingency and went ahead with the contract despite not even having submitted her planning approval at that time. So that favor weighs heavily in favor of the city. In the First Amendment speech context, we've held before that visual aesthetics and traffic safety are not a compelling state interest. Why wouldn't we apply the analysis in Demet versus City of Clearwater to the same facts in this case? Well, Your Honor, first, our position would be that you don't have to get there because there's not a substantial burden that's been found by the district court twice in this weighing of the factor. But if you do have to get there, again, compelling interest, it has to be a workable standard. Otherwise, you're going to potentially immunize religious organizations from zoning regulations. That's not the intent of our LUPA. And while, again, it's a high standard, there has to be some flexibility to allow cities to enforce their zoning regulations and maintain a family environment for their citizens. Can I ask one more question? I wanted to go back to the ARFA claim for just a second, your argument that it doesn't apply to a zoning ordinance like this.  Administrative provision, ruling guideline requirement, or any statement of law whatsoever. Why does it not answer the question and tell us that ARFA applies? Right. The distinction is how they define freedom of religion within ARFA as opposed to the federal counterpart. It points you back to Article I, Section 3 of the Alabama Constitution, which lists out some specific areas that are covered under that freedom of religion. And land use planning doesn't appear there, Your Honor. So we would argue that under the plain language, ARFA simply just doesn't apply to this case. All right. But the plain language also says that it applies to any regulation, et cetera. I guess your argument is but only with respect to what's defined here as far as freedom of religion. That's correct, Your Honor. Unless there's any other questions, I see my time has expired. Thank you. Thank you, Ms. Johnson. Ms. Storza, you've reserved some time for rebuttal. Yes, Your Honor. Speaking first to the substantial burden factor of the availability of other properties, I just want to note once more that my colleague referred to an unusual request to convert a home, and yet when the city argues that the plaintiff owns other homes within the city of Mobile, that is what they are suggesting that the plaintiff do, is just to move on to another home that they own, which then presumably the city would treat as another unusual request. But also turning to the traffic, and this court is absolutely correct that it has never held that aesthetics and traffic safety alone are compelling governmental interests. A significant interest is not a compelling one. With regard to the Gross case, in Gross, the plaintiff argued that simply having to apply was a substantial burden. That was a facial challenge, and this is not. Plaintiffs are not challenging the existence of the zoning code, but rather the denial of their application for planning approval. And as a result, the city must show that whatever harm it is, whatever harm it believes that plaintiffs would cause would actually be caused by the plaintiffs. It has to apply that regulation to the person. That's what the United States Supreme Court has held in Gonzales v. Osencio, Espiritu Beneficiante, and it's what this court also considered in Salantic v. City of Neptune Beach. And even assuming that the city were able to rely on anecdotal evidence of a threat to traffic safety, it would need to show that it actually considered ways other than outright denial of addressing that. And the Fourth Circuit most recently considered that question in Redeemed Christian Church of God of Bowie v. Prince George's County, where the court said even if this anecdotal evidence of the neighbors is what the city relies on or what the county relies on, they have to show that they engaged in some kind of analysis. So there is no real traffic concern, as Your Honor noted. The traffic engineer's testimony to that is at 196-28 at 7523-76-3, that there would be no issues with respect to vehicular access, traffic volume, or traffic safety. It's undisputed in this case that the city has approved religious and nonreligious land uses with far greater impacts. And when the city sent an employee to monitor any traffic caused by a retreat on plaintiff's property, that staff member wrote that she did not even witness any increase in traffic. And that's at 196-78 at COM 9097. The plaintiffs could not modify their application because the city didn't treat it as a church. And that was part of the arbitrary treatment and the changing of the classifications of plaintiff's use that plaintiffs were forced to endure throughout the administrative process. There's no evidence that plaintiffs could fix the neighbors' concerns, which was that the neighbors repeatedly testified that the plaintiffs were attempting to move a business into their neighborhood. It cannot be the case that you have to prove that no other location could exist. To do so would be redundant with RLUIPA's total exclusion provision. Thank you. Thank you, counsel. Court is adjourned. All rise.